**In re: Robert M. KADJEVICH, Debtor.**

**Nicholas George Kadjevich, Jr., Appellant,**

v.

**Robert M. Kadjevich; Suzanne L. Decker, Trustee; United States Trustee/San Jose, Appellees.**

**In re: Robert M. Kadjevich, Debtor.**

**Suzanne L. Decker, Trustee, Appellant,**

v.

**Nicholas George Kadjevich, Jr., Appellee.**

**Nos. 99–15367, 99–15372.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 3, 2000

Submission Withdrawn May 8, 2000[1]

Resubmitted July 26, 2000

Filed Aug. 8, 2000

1. After these cases were argued and submitted, we withdrew submission and referred the

cases to mediation. We acknowledge the ef- forts of the Circuit Mediation Office.

John S. Perkins, San Jose, California, for the appellant/cross-appellee.

Elizabeth Berke–Dreyfuss, Wendel, Rosen, Black & Dean, LLP, Oakland, California, for the appellee/cross-appellant.

Before: WOOD, Jr.,[2] KLEINFELD, and GRABER, Circuit Judges.

GRABER, Circuit Judge:

Since Angela Kadjevich died 20 years ago, her sons Nicholas and Robert have been embroiled in seemingly perpetual litigation. Initially, the brothers quarreled over the disposition of Angela's estate. That dispute spawned others. An early casualty of this prodigious litigation was Robert's solvency; since 1987, he has been in bankruptcy.

In the decision that we are asked to review today, the bankruptcy court declined to grant administrative-expense status to two claims made by Nicholas against Robert's bankruptcy estate. We conclude that the claims cannot be considered administrative expenses of Robert's bankruptcy estate and, thus, affirm the decision of the bankruptcy court.

## FACTUAL AND PROCEDURAL BACKGROUND

Nicholas, Robert, and Angela Kadjevich co-owned several industrial properties in South San Francisco. When Angela died in 1980, Robert assumed control of the properties. In 1983, Nicholas brought a state-court action against both Angela's estate and Robert, seeking partition of the estate and an accounting. That action settled.

Soon thereafter, Robert breached the settlement agreement and, in April 1985, Nicholas sued Robert for fraud. In September 1987, while the fraud case was pending, Robert filed a petition for relief under Chapter 11 of the Bankruptcy Code. Nicholas obtained relief from the automatic stay associated with Robert's bankruptcy case and continued to prosecute the fraud action.

In January 1990, Nicholas and Robert settled the fraud action as part of an effort to obtain a "global" settlement of all the litigation among Nicholas, Robert, Robert's bankruptcy estate, and Angela's probate estate. Once again, however, Robert breached the settlement agreement. Ultimately, the fraud case went to trial, a jury found Robert guilty of fraud, and the state court awarded Nicholas $27,000 in fraud damages and $38,000 in back rent. In addition, the state court awarded Nicholas $150,000 under California Code of Civil Procedure § 128.5 as compensation for attorney fees and costs that he had incurred as a result of Robert's bad-faith breach of the 1990 settlement.

In August 1990, Robert's Chapter 11 reorganization case was converted to a Chapter 7 liquidation case, and a trustee was appointed. Five years later, under the auspices of the bankruptcy court, the parties attempted another "global" settlement. Under that settlement, Nicholas was to receive the most valuable property that remained in Angela's probate estate. Because this property was worth more than Nicholas' share of Angela's estate, he was required to make an equalizing payment to Robert's bankruptcy estate. That payment, the parties agreed, could be made in the form of a "credit bid," which meant that Nicholas could credit the full amount of the judgment in the fraud action against the money that he owed to Robert's bankruptcy estate.

Although the bankruptcy court initially approved the parties' settlement, the court ultimately refused to allow Nicholas to offset the $150,000 fee award against the required equalization payment that he was

**2.** The Honorable Harlington Wood, Jr., Senior United States Circuit Judge for the Seventh Circuit, sitting by designation.

required to pay to Robert's bankruptcy estate. The court reasoned that allowing Nicholas to credit the fee award would violate the Bankruptcy Code's prioritization scheme by paying Nicholas' claim for fees ahead of other comparable claims.

Nicholas arranged alternative financing and made the equalization payment in cash. Obtaining that alternative financing cost him roughly $50,000. Nicholas appealed the bankruptcy court's order denying his request to credit the fee award, but the Bankruptcy Appellate Panel (BAP) concluded that the issue was moot because Nicholas already had made the required payment through other means.

Nicholas then requested that both the $150,000 fee award and the $50,000 in additional expenses be classified as administrative expenses of Robert's bankruptcy estate. The bankruptcy court denied both requests. On appeal, the BAP held that the $150,000 fee award was an administrative expense, but that the $50,000 financing expense was not. Both parties timely appealed.

### STANDARD OF REVIEW

■ We review independently the decision of the bankruptcy court, showing no deference to the decision of the BAP. *See Texas Comptroller of Public Accounts v. Megafoods Stores, Inc. (In re Megafoods Stores, Inc.),* 163 F.3d 1063, 1067 (9th Cir. 1998). We review de novo the bankruptcy court's conclusions of law, and we review for clear error the bankruptcy court's findings of fact. *See id.* Finally, we review for abuse of discretion the bankruptcy court's ultimate decision whether to treat a particular claim as an administrative expense. *See Burlington N. R.R. Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 707 (9th Cir.1988).

### ANALYSIS

A. *Nicholas' Claim for Fees Cannot be an Administrative Expense Because it is a Pre–Petition Claim.*

■ When the assets of a bankruptcy estate are distributed to the bankrupt's creditors, claims for administrative expenses are among the very first unsecured claims that are paid. *See United States Trustee v. Endy (In re Endy),* 104 F.3d 1154, 1155–56 (9th Cir.1997); 11 U.S.C. §§ 726(a), 507(a)(1), 503(b). The Bankruptcy Code provides a nonexhaustive list of allowable administrative expenses; they include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case." 11 U.S.C. § 503(b)(1)(A); *see Megafoods Stores,* 163 F.3d at 1071 (explaining that the list of particular administrative expenses contained in § 503(b) is nonexhaustive). In general, post-petition business expenses are granted administrative-expense priority so that third parties will risk providing the goods and services that are necessary for a struggling debtor to reorganize. *See Microsoft Corp. v. DAK Indus., Inc. (In re DAK Indus., Inc.),* 66 F.3d 1091, 1097 (9th Cir.1995) ("Payment of administrative expenses allows the debtor to secure goods and services necessary to administer the estate, which ultimately accrues to the benefit of all creditors.").

■ In addition to those kinds of "standard" administrative expenses, tort claims based on a trustee's post-petition negligence are granted administrative-expense priority. *See Reading Co. v. Brown,* 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968). Such claims are deemed "ordinarily incident to [the] operation of a business," *id.* at 483, 88 S.Ct. 1759, and are granted priority status so that the victims of a reorganizing business' torts will be compensated ahead of the creditors who sought reorganization.

■ Critically, however, only *post-petition* debts can be treated as administrative expenses; *pre-petition* debts may not be granted administrative-expense priority. *See* 11 U.S.C. § 503(b)(1)(A) (providing that administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, sal-

aries, or commissions for services rendered *after the commencement of the case*") (emphasis added); *Reading Co.*, 391 U.S. at 482, 88 S.Ct. 1759 (holding that "tort claims *arising during an arrangement* [are] actual and necessary expenses of the arrangement") (emphasis added); *Dant & Russell*, 853 F.2d at 707 (noting that "any claims under the section must have a distinct postpetition character"); *Christian Life Center Litig. Defense Comm. v. Silva (In re Christian Life Center)*, 821 F.2d 1370, 1373–74 (9th Cir.1987) ("Claims that arise from a creditor's prepetition services to the estate are not entitled to administrative expense treatment."). The question here, then, is whether Nicholas' claim for attorney fees is a pre-petition or a post-petition claim. Relying on our recent decision in *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755 (9th Cir.1998), we conclude that it is a pre-petition claim and, therefore, that it may not be treated as an administrative expense.

The facts of *Abercrombie* are relatively straightforward. Abercrombie won a judgment in a state-court breach-of-contract case. The defendant in the contract case, Hayden Corporation, appealed and, while the appeal was pending in the state supreme court, Abercrombie filed a bankruptcy petition. The state supreme court then reversed the judgment and, pursuant to a fee provision in the parties' contract, ordered Abercrombie to pay Hayden's attorney fees. *See id.* at 756.[3]

Hayden asked the bankruptcy court to grant administrative-expense priority to the attorney fees that it had incurred after Abercrombie filed his bankruptcy petition, on the theory that those fees were caused by Abercrombie's post-petition defense of the appeal. This court held that, because the award of attorney fees was made in an action commenced pre-petition, under the authority of a pre-petition contract, it was pre-petition in nature and could not be

considered an administrative expense. Although Abercrombie had caused the fees to be incurred through its post-petition conduct, "the source of the estate's obligation remain[ed] the prepetition fee provision." *Id.* at 759.

In the present case, the "source" of the award of attorney fees is the pre-petition state-court fraud action that brought Robert under the jurisdiction of the California courts and subjected him to the fee-shifting rule contained in California Code of Civil Procedure § 128.5. The state court's judgment in that case is unitary; all of it must be considered pre-petition under the reasoning of *Abercrombie*. For the purpose of establishing the priority of a claim for attorney fees, we see no principled basis to distinguish a pre-petition *contract* that provides for fees from a pre-petition *tort claim* that results in fees. By analogy to *Abercrombie*, the fact that Robert did not engage in the particular misconduct that caused the fees to be awarded until after he filed his bankruptcy petition does not change the fundamentally pre-petition nature of the fraud action and of the total resulting judgment.

It is undisputed that Nicholas' basic claim for fraud damages is a pre-petition, nonpriority claim. *See, e.g. Corman v. Morgan (In re Morgan)*, 197 B.R. 892, 899–900 (N.D.Cal.1996); *In re Allen*, 241 B.R. 710, 713 (Bankr.D.Mont.1999); *cf. Papadakis v. Zelis (In re Zelis)*, 66 F.3d 205 (9th Cir.1995) (holding that two state-court sanction awards that were based on the debtor's pre-petition filing of two frivolous appeals were pre-petition obligations of the estate). Because Nicholas' claim for attorney fees arises from the same pre-petition obligation as the damages, back rent, costs, and all other components of the state court's judgment, it should be afforded the same priority in federal bankruptcy proceedings as those other items.

---

**3.** Although the fact is not mentioned in the *Abercrombie* opinion, Hayden must have obtained a lifting of the stay associated with Abercrombie's bankruptcy in order to continue its appeal in the state supreme court.

Our conclusion finds substantial support in *Cohen v. de la Cruz*, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998). In *Cohen*, the Court held that attorney fees that were awarded under state law in connection with a debtor's fraud were nondischargeable under 11 U.S.C. § 523(a)(2)(A). That statute excepts from discharge "any debt ... for money ... to the extent obtained by ... false pretenses, a false representation, or actual fraud." Because the nondischargeable fraud debt was the source of the award of attorney fees, the award likewise was nondischargeable even if it resulted from the debtor's good-faith attempt to litigate the issue of dischargeability. The fraudulent character of the initial debt established that the entire resulting obligation, including the attendant fees, was nondischargeable. *See id.* at 218–19, 118 S.Ct. 1212 ("Once it is established that specific money or property has been obtained by fraud, however, 'any debt' arising therefrom. is excepted from discharge.").

Consistent with *Abercrombie* and *Cohen,* we hold that the attorney fees awarded by the state court to Nicholas, based on Robert's bad-faith failure to settle the prepetition fraud case, may not be granted administrative-expense priority.[4] We emphasize, however, that our holding is a narrow one. We do not deal here with a case in which a representative of the estate commenced litigation on behalf of the estate after a bankruptcy petition was filed, *cf. In re Met–L–Wood Corp.*, 115 B.R. 133 (N.D.Ill.1990), or one in which the representative obtained relief from the automat-ic stay to continue pre-petition litigation, *cf. In re E.A. Nord Co.*, 78 B.R. 289 (Bankr.W.D.Wash.1987).

### B. *Nicholas' Claim for the $50,000 Financing Cost Cannot be an Administrative Expense Because it was not Caused by the Administration or Operation of the Estate.*

Nicholas also seeks administrative-expense priority for his claim for $50,000 in financing costs that he incurred in order to make the equalizing payment that was required by the 1995 "global" settlement. Although Nicholas incurred those costs post-petition, they nonetheless are not administrative expenses of Robert's bankruptcy estate.

Nicholas incurred the $50,000 in financing costs solely because the bankruptcy court concluded that it would violate the Bankruptcy Code for Nicholas to "credit bid" the fee award. The financing costs had nothing to do with "preserving the estate" and, indeed, the estate received nothing from Nicholas based on his incurring those costs. Accordingly, they are not "standard" administrative expenses under § 503(b)(1)(A).

Moreover, because the costs were caused solely by the bankruptcy court's order concerning the credit-bid arrangement, and were not caused by any wrongful action of the trustee, they cannot be considered administrative expenses under the "fairness" principle of *Reading Co.*

---

4. We observe that the bankruptcy court's decision in *In re Execuair Corp.*, 125 B.R. 600 (Bankr.C.D.Cal.1991), appears inconsistent with our holding. To that extent, we disapprove that opinion.

We also are aware that the First Circuit granted administrative-expense priority to post-petition attorney fees that were caused by the debtor's contemptuous breach of a prepetition injunction. *See Spunt v. Charlesbank Laundry, Inc. (In re Charlesbank Laundry, Inc.)*, 755 F.2d 200 (1st Cir.1985). That decision did not address whether the fees were pre-petition or post-petition, however, but considered only whether the "fairness" ratio-nale of *Reading Co. v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968), could be applied to an intentional, rather than a negligent, tort. Although the scope of the *Charlesbank Laundry* holding is unclear, we take comfort in the fact that the First Circuit follows the rule of *Abercrombie. See Woburn Assocs. v. Kahn (In re Hemingway Transport, Inc.)*, 954 F.2d 1, 7 (1st Cir.1992) ("We are aware of no authority that the *Reading–Charlesbank* exception encompasses a right to payment [for attorney fees that were incurred in post-petition litigation] originating in a prepetition contract with the debtor.").

In short, the financing costs incurred by Nicholas simply were not part of the administration or operation of the estate. Rather, they were part of the administration and operation of *Nicholas' own* real estate business. Accordingly, Nicholas' claim may not be granted administrative-expense priority.[5]

## CONCLUSION

The judgment of the Bankruptcy Appellate Panel is AFFIRMED in part and REVERSED in part. The judgment of the bankruptcy court is AFFIRMED. Costs on appeal are awarded to the Trustee.

---

5. In the present posture of the case, we need not and do not decide whether Nicholas' claim for $50,000 in financing costs is a proper claim in the first instance.