**In re GOOD TASTE, INC. d/b/a Saucy Sisters Catering, Debtor.**

**No. A00–00880–HAR.**

United States Bankruptcy Court, D. Alaska.

Oct. 29, 2004.

---

Gary Sleeper, Anchorage, AK, for Connie Bennett.

Thomas Yerbich, Anchorage, AK, for the Debtor.

Cabot Christianson, Michelle Boutin, and Gary Spraker, Anchorage, AK, for the Trustee.

## MEMORANDUM DECISION ALLOWING ADMINISTRATIVE EXPENSE PRIORITY FOR BENNETT'S ATTORNEY FEES AND COSTS

HERB ROSS, Bankruptcy Judge.

Contents        Page

1. *INTRODUCTION* ..............................................114

2. *ISSUE* ......................................................114

3. *ANALYSIS* ..................................................114

 3.1. The Successful Defendant Against a Trustee's § 544(b) Avoidance Action Based on the Alaska Fraudulent Conveyance Act is Entitled to Attorney Fees and Costs ........................................114

 3.2. The *Abercrombie* and *Kadjevich* Cases Are Not Dispositive as to Whether or Not the Fees and Costs Are Entitled to Administrative Expense Priority ...........................................114

 3.3. The Fundamental Fairness Doctrine of *Reading Company v Brown* Requires That Administrative Expense Priority for Attorney Fees and Costs for Successfully Defending Against the Trustee's § 544(b) Avoidance Action .............................................116

4. *CONCLUSION* ...............................................121

1. *INTRODUCTION*—The trustee brought an avoidance action under § 544(b),[1] in conjunction with the Alaska Fraudulent Conveyance Act,[2] to recover a prepetition transfer from the debtor to Connie Bennett, debtor's sole shareholder. Bennett successfully defended and was awarded $14,364.40 in attorney fees and costs which were allowable under state law.

She moved to have these treated as administrative expenses. The trustee objected that the fees should not be given administrative expense priority because they did not benefit the estate and arose from a prepetition transaction.

I hold that attorney fees and costs awarded against the trustee (i.e., the estate) in a postpetition adversary proceeding seeking to avoid a transfer under § 544(b), and relying on state law which allows for attorney fees and costs to the prevailing party, should be granted administrative expense priority as a matter of fundamental fairness alluded to in *Reading Company v. Brown.*[3]

2. *ISSUE*—When a trustee files an avoidance action under § 544(b), using the Alaska Fraudulent Conveyance Act as his vehicle, and he loses the case, are the attorney fees and costs which the defendant is awarded under Alaska law entitled to administrative claim priority?

3. *ANALYSIS*—

■ 3.1. *The Successful Defendant Against a Trustee's § 544(b) Avoidance Action Based on the Alaska Fraudulent Conveyance Act is Entitled to Attorney Fees and Costs*—The general rule regarding attorney fees in bankruptcy is that they are not awarded to the successful party.[4]

■ In a case decided in state court under the Alaska Fraudulent Conveyance Act,[5] attorney fees are awardable to the prevailing party per court rule.[6]

■ If a bankruptcy matter is decided with reference to state law which does recognize the award of attorney fees to a prevailing party, bankruptcy law will generally follow the state law rule and award attorney fees. The 9th Circuit *Bybee* case involved a § 544(b) action in which the defendant was awarded attorney fees, but the opinion does not say whether they were to be treated as an administrative expense claim with high priority in payment or a general unsecured claim, which is at the lower end of the payment priorities.[7]

■ The trustee does not contest the award of attorney fees and costs in this case, only the priority of payment.

3.2. *The Abercrombie and Kadjevich Cases Are Not Dispositive as to Whether or Not the Fees and Costs Are Entitled to Administrative Expense Priority*—Recently, the BAP, in *In re Ybarra*,[8] discussed the ambiguous state of the 9th Circuit authority regarding either the dischargeability of attorney fees against a

1. 11 U.S.C. § 544(b).

2. AS 34.35.010, *et seq.*

3. *See,* section 3.3 of this memorandum.

4. *Matter of Sparkman,* 703 F.2d 1097, 1099 (9th Cir.1983).

5. AS 34.35.010, *et seq.*

6. Alaska Civil Rule 82(b)(1).

7. *In re Bybee,* 945 F.2d 309, 315–16 (9th Cir. 1991).

8. *In re Ybarra,* 295 B.R. 609 (9th Cir. BAP 2003).

debtor, or their status as administrative expenses, with respect to postpetition litigation activity based on prepetition claims.

The ambiguity arose when the 9th Circuit deciding two cases in close proximity, in arguably a contradictory manner, without referring to each other (*Abercrombie* and *Siegel* ).[9] A third case (*Kadjevich* ) adopted the view of *Abercrombie* without referring to or distinguishing *Siegel.*[10] The trustee relies on the *Abercrombie* and *Kadjevich* cases to argue that postpetition attorney fees with respect to a prepetition claim should not be given administrative priority.

The BAP, in *Ybarra*, summarized the three circuit cases and tried to harmonize them. It determined the cases stood for the following: [11]

*ABERCROMBIE*— [12] This matter involved whether a claim to attorney fees was entitled to administrative expense priority. When the debtor filed his chapter 11, he was defending a state court appeal on a case filed *prepetition.* The state court reversed the decision *postpetiton* and awarded attorney fees against the debtor pursuant to a contract provision regarding attorney fees.

The defendant who was awarded the attorney fees after the appeal sought administrative expense treatment for them in the bankruptcy case. The 9th Circuit rejected the request. *Ybarra* summarizes the reasoning as:

> The reasoning of *Abercrombie* is that a claim for attorney fees is a prepeti-

tion claim if the source of fee award is a prepetition contract, regardless of whether the fee award is the result of debtor's postpetition activity.[13]

*SIEGEL*— [14] The BAP panel in *Ybarra* surmised this was a chapter 7 case. It involved whether attorney fees arising from litigation commenced postpetition on a prepetition matter were discharged as a prepetition debt.

A lender had filed a proof of claim in the bankruptcy case which went unchallenged. The debtor then received a discharge. After the discharge, the debtor sued the lender on a lender's liability claim in state court (i.e., *postpetition* ), although he had not disclosed the claim on his schedules.

The lender removed the state court action to district court, which entered a summary judgment against the debtor. The lender was also awarded attorney fees under the terms of the note and deed of trust at issue, for which it sought a determination that they were not discharged.

The principle holding of *Siegel,* which did not mention *Abercrombie,* decided about six weeks before it, is summarized in *Ybarra* as follows:

> The reasoning of *Siegel* is that, where liability on a prepetition claim is entirely contingent on actions initiated by the debtor postpetiton, rather than actions taken by another party, the liability is not a "claim" as defined by

---

**9.** *Compare, In re Abercrombie,* 139 F.3d 755 (9th Cir.1998) with *Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d 525, 531–34 (9th Cir.1998).

**10.** *In re Kadjevich,* 220 F.3d 1016 (9th Cir. 2000).

**11.** *In re Ybarra,* 295 B.R. at 612–15.

**12.** *In re Abercrombie,* 139 F.3d 755 (9th Cir. 1998).

**13.** *In re Ybarra,* 295 B.R. at 613–14.

**14.** *Siegel v. Federal Home Loan Mortgage Corp.,* 143 F.3d 525 (9th Cir.1998).

the Bankruptcy Code and is not subject to discharge.[15]

KADJEVICH— [16] In this case, involving a claim for administrative expense status for attorney fees, the debtor was a defendant in a state court action begun prepetition based on fraud. After the bankruptcy was filed, the automatic stay was lifted to allow the suit to proceed in state court. The debtor reached a settlement during the course of the bankruptcy, but breached it.

The fraud case went to a postpetition trial and a verdict for the plaintiff was entered, and there was an award of attorney fees against the debtor. The plaintiff requested that the attorney fees be classified as administrative expense of the debtor's bankruptcy case.

The 9th Circuit held that the attorney fees awarded postpetition by the state court should not be treated as an administrative expense because they were deemed to have arisen prepetition in connection with the prepetition fraud claim. The court relied on *Abercrombie*, and did not mention *Siegel* at all. But it also said:

> We do not deal here with a case in which a representative of the estate commenced a litigation on behalf of the estate after the bankruptcy petition was filed, or one in which the representative obtained relief from the automatic stay to continue prepetition litigation. [citations omitted] [17]

The plurality in *Ybarra* struggled to rationalize the three cases, one of which seemed at odds. Finally, without much enthusiasm, the principal opinion said that a possible rationalization of the cases was that in *Abercrombie* and *Kadjevich* the actions on the prepetition claims had been commenced *prepetition*, whereas in *Siegel*, the action on the prepetition claim was commenced *postpetition*. While admitting "puzzlement" as to why that should make a difference, it concluded that the facts of the *Ybarra* case itself clearly fell within the *Abercrombie* and *Kadjevich* ambit.

The facts of *Ybarra* allowed the court to follow the two more defensible 9th Circuit cases (*Abercrombie* and *Kadjevich*). *Had the facts been that the suit in question was filed postpetition, I suspect that the BAP would have searched further rather than just saying the Siegel factor that the proceeding had been filed postpetition was the controlling factor. Thus, while I might conclude this memorandum by saying Ybarra controls in favor of Bennett's claim for attorney fees because the § 544(b) proceeding was brought postpetition, I do not think that rationale alone is convincing, so I will search further for an answer.*

Also, *Kadjevich* clearly excluded cases, like ours, where the suit is brought by a trustee. Should *Abercrombie* and *Kadjevich* be extended to the current facts or are there other legal principles to consider which may change the result?

3.3. *The Fundamental Fairness Doctrine of Reading Company v Brown Requires That Administrative Expense Priority for Attorney Fees and Costs for Successfully Defending Against the Trustee's § 544(b) Avoidance Action*—The Bankruptcy Code provides that administrative expenses are granted first priority in distribution [18] for "the actual, necessary costs and expenses of preservation of the estate, including wages, salaries, or com-

---

**15.** *In re Ybarra,* 295 B.R. at 613–14.

**16.** *In re Kadjevich,* 220 F.3d 1016 (9th Cir. 2000).

**17.** *In re Kadjevich,* 220 F.3d at 1021; quoted in *In re Ybarra,* 295 B.R. at 614–15.

**18.** 11 U.S.C. § 507(a)(1).

missions for services rendered after the commencement of the case ..."[19] There are some 9th Circuit cases interpreting the quoted language strictly, and others suggesting more liberality in interpretation.

One case, *Megafoods Stores*, suggested that the word "including" in § 503(b)(1)(A) shows that the list is not exhaustive and that the pre-code Supreme Court case of *Reading Company v. Brown*[20] not only survived the enactment of the Bankruptcy Code, but has been expanded by lower courts.[21]

*Reading* was decided by the Supreme Court in 1968. It interpreted a section of the Bankruptcy Act of 1898 (as amended) involving the allowance of administrative expenses,[22] which is similar to the current Bankruptcy Code statute.[23] Both the pre- and post-Bankruptcy Code statutes, in slightly varying words, grant administrative expense priority to the actual and necessary expenses incurred in preserving the estate.

In *Reading*, a trustee in a Chapter XI case rented the industrial building which was the main asset of the arrangement proceeding. The building burned, allegedly due to the trustee's negligence, and the adjoining property suffered heavy damage. The owner of the adjoining premises filed a $560,000 administrative claim for the fire damage. There were numerous prepetition unsecured creditors. For the purposes of the argument in the district court, the parties assumed the trustee was negligent. Both the district court[24] and appellate court[25] held that administrative expense treatment was not warranted, but the Supreme Court disagreed.

The touchstone of the court's opinion was:

> In our view the trustee has overlooked one important, and here decisive, statutory objective: fairness to all persons having claims against the insolvent.[26]

It pointed out that 28 U.S.C. § 959(b) requires a trustee appointed by a United States court (including a debtor in possession) to manage and operate the business in accordance with local state law, just the same as a regular owner or possessor of the property.[27] It concluded that the *Reading* trustee was attempting to advance the bankruptcy process of reorganization by renting the property and said:

> [I]t is theoretically sounder, as well as linguistically more comfortable, to treat tort claims arising during an arrangement as actual and necessary expenses of the arrangement rather than debts of the bankrupt.[28]

It concluded:

> We hold that damages resulting from negligence of a receiver acting within

---

19. 11 U.S.C. § 503(b)(1)(A).

20. *Reading Company v. Brown*, 391 U.S. 471, 88 S.Ct. 1759, 20 L.Ed.2d 751 (1968).

21. *In re Megafoods Stores, Inc.*, 163 F.3d 1063, 1071 (9th Cir.1998).

22. Sec. 64a of the Bankruptcy Act of 1898, 11 U.S.C. § 104(a) *repealed*.

23. 11 U.S.C. § 503(b)(1)(A).

24. *In re I.J. Knight Realty Corp.*, 242 F.Supp. 337 (E.D.Pa.1965).

25. *In re I.J. Knight Realty Corp.*, 370 F.2d 624 (3rd Cir.1967).

26. *Reading Company v. Brown*, 391 U.S. at 479, 88 S.Ct. 1759.

27. *Reading Company v. Brown*, 391 U.S. at 479, n. 7, 88 S.Ct. 1759.

28. *Reading Company v. Brown*, 391 U.S. at 482, 88 S.Ct. 1759.

the scope of his authority as receiver give rise to "actual and necessary costs" of a Chapter XI arrangement.[29]

Several points are apparent. In the real world, a bankruptcy trustee's burning down his neighbor's building is not an actual and necessary expense which is beneficial to a reorganization. Second, the statute does not exactly lend itself to this interpretation. But, as a policy matter, the result seems just—if a trustee causes a harm while seeking to reorganize, payment for that harm should be part of the freight for seeking to reorganize. The dissent would have come down on the side of the unsecured creditors under these facts. It would not have diluted the unsecured creditors' recovery in order to protect the unlucky neighbor who was burned out.

Judge Klein, in his concurrence in *Ybarra*, alluded to the dilemma—one of two innocent parties' ox was getting its ox gored (either the postpetition creditor who was inadvertently damaged, without providing a benefit to the estate or the prepetition unsecured creditors whose claims are being diluted)—but suggested that having a rational precedent to follow was a more important matter than who was stuck with the extra burden:

> [I]t is worth noting that the underlying issue of how to treat postpetition litigation expenses on prepetition causes of action is one of those situations in which it is more important that there be one rule consistently applied than whether the merits of the particular rule are beyond cavil. All sides of the question have merit. In the absence of a definitive ruling or statutory clarification, argument could continue in perpetuity without getting closer to resolution.

Once the legal world knows whether postpetition litigation expenses will be treated as prepetition or postpetition debts, litigants can take the known rule into account as they go about making litigation decisions.[30]

Ninth Circuit cases have more often read § 503(b)(1)(A)'s requirement that administrative expenses be "actual and necessary" in the more literal sense then *Megafoods Stores*. Representative of this stricter approach is *DAK Industries*.[31] In that case, Microsoft sought administrative expense status based on postpetition production of computers which were entitled to install Microsoft software based on a prepetition contract with a minimum periodic payment.

The court characterized the prepetition contract as one for a lump sum sale of software. Because the contract was entered into before the bankruptcy and no software was actually installed postpetition, although the contract called for a payment based on some computer units produced postpetition, the court treated the claim as a general unsecured claim rather than an administrative expense. The court said:

> The burden of proving an administrative expense claim is on the claimant. The claimant must show that the debt asserted to be an administrative expense (1) arose from a transaction with the debtor-in-possession as opposed to the preceding entity (or, alternatively, that the claimant gave consideration to the debtor-in-possession); and (2) directly and substantially benefitted the estate. The bankruptcy court has broad discretion to determine whether to grant such a claim. In order to keep administrative

---

**29.** *Reading Company v. Brown,* 391 U.S. at 487, 88 S.Ct. 1759.

**30.** *In re Ybarra,* 295 B.R. at 617.

**31.** *In re DAK Industries, Inc.,* 66 F.3d 1091 (9th Cir.1995).

costs to the estate at a minimum, "the actual, necessary costs and expenses of preserving the estate," § 503(1)(A), are construed narrowly. [citations in the body omitted and reproduced in footnote below] [32]

In espousing a strict reading of what constitutes actual and necessary expenses to preserve the estate, 9th Circuit courts have often refused to expand the *Reading Company v. Brown* exception. One example is *In re Kadjevich*.[33] In that case a long running probate dispute existed between the debtor and his brother. A chapter 11 was filed, during which a global settlement was reached and apparently approved, but ultimately breached by the debtor. The nondebtor brother then obtained a judgment, including $150,000 in attorney fees under California law, and sought administrative expense status for the fees.

The court noted that, under *Reading Company v. Brown*, in addition to the usual kinds of administrative expenses claims, tort claims based on a trustee's postpetition negligence might qualify for administrative expense treatment, but "only *post-petition* debts can be treated as administrative expenses; *pre-petition* debtor may not be granted administrative-expense priority." [34] So, the court denied administrative expense treatment to the $150,000 in fees which it deemed to have arisen from the prepetition lawsuit, but

nonetheless proffered a possible exception to the rule it had stated:

> We do not deal here with a case in which a representative of the estate commenced a litigation on behalf of the estate after the bankruptcy petition was filed, *cf. In re Met–L–Wood Corp.*, 115 B.R. 133 (N.D.Ill.1990), or one in which the representative obtained relief from the automatic stay to continue pre-petition litigation, *cf. In re E.A. Nord,* 78 B.R. 289 (Bankr.W.D.Wash.1987).[35]

*Met–L–Wood Corp.* is a two page district court opinion. A chapter 7 trustee sought to raise an issue of possible fraud in a sale approved by the court while the case was in chapter 11. He challenged several law firms involved in the sale, but the bankruptcy judge found the trustee's position exceedingly weak and awarded the law firms about $50,000 in fees for defending themselves, using the "fundamental fairness" rationale of *Reading Company v. Brown*.

In affirming the bankruptcy court, the district court noted that *Reading* has been extended beyond the tort situation. There was no mention of the trustee's duties under 28 USC § 959(b) to adhere to state law (this was, apparently, a bankruptcy law matter anyway and chapter 7 trustees are generally found to not be subject to that statute).[36] Nor did the district court rely on the rationale of promotion of reorganizations which was mentioned in *Reading Company v. Brown*. The district

---

**32.** *In re DAK Industries, Inc.*, 66 F.3d at 1094, citing: *In re Sinclair*, 92 B.R. 787, 788 (Bankr.S.D.Ill.1988); *In re White Motor Corp.*, 831 F.2d 106, 110 (6th Cir.1987); *In re Dant & Russell, Inc.*, 853 F.2d 700, 706 (9th Cir. 1988); *In re Palau*, 139 B.R. 942, 944 (9th Cir. BAP 1992), *aff'd*, 18 F.3d 746 (9th Cir. 1994).

**33.** *In re Kadjevich*, 220 F.3d 1016 (9th Cir. 2000).

**34.** *In re Kadjevich*, 220 F.3d at 1019; *See, also, In re Jack/Wade Drilling, Inc.*, 258 F.3d 385 (5th Cir.2001), refusing to expand the *Reading Company v. Brown* exception.

**35.** *In re Kadjevich,* 220 F.3d at 1021.

**36.** 6 *Collier on Bankruptcy,* ¶ 721.03[1], *Compliance with Local Law; 289 U.S.C. § 959(b)* (15th ed rev 2004).

court noted that many cases which agreed with the expansive interpretation of *Reading* involved frivolous litigation, although it said that the *Met–L–Wood Corp.* case was not necessarily one of those.[37] It appears that fundamental fairness was the reason for giving the fees administrative expense status to the postpetition fees.

I must mention the 1995 BAP case of *In re Madden*,[38] however. A chapter 11 debtor had filed a prepetition suit for breach of contract in state court, which he continued after filing for bankruptcy. The defendants prevailed and were awarded attorney fees. The bankruptcy court denied administrative expense treatment under § 503(b)(1)(A), but the BAP reversed. It gave a more expansive reading of the section, and commented on the non-exclusive meaning of the word "including" in the section, much like the 9th Circuit did in December 1998, in *Megafoods Stores*,[39] and attempted to distinguish some of the 9th Circuit cases which argue for a strict construction.[40] *Madden* also discussed the equitable concept (fundamental fairness or injustice) of *Reading Company v. Brown* and reached a conclusion that administrative expense treatment was equitable,[41] much like the court in *Met–L–Wood Corp.* did.

The conundrum is:

*Abercrombie* (decided March 24, 1998) called the holding of *Madden* into question with respect to its expansive interpretation of *Reading Company v. Brown*;[42]

*Siegel* (decided May 5, 1998) spoke approvingly of *Madden*;[43]

*Megafoods Stores* spoke approvingly of cases from other circuits giving an expansive interpretation of § 503(b)(1)(A) and *Reading Company v. Brown*, almost identical to the reasoning in *Madden* (without mentioning it); the court also attempted to harmonize *Abercrombie* (not very persuasively in my opinion);[44] and,

*Kadjevich* (decided August 8, 2000) did not cite *Madden*, but noted a possible exception to its general holding, based on *Met–L–Wood Corp.*, an opinion which sounds a lot like *Madden* in its interpretation of *Reading Company v. Brown*.[45]

All in all, I get a mixed message from the 9th Circuit cases.

In the *Good Taste* case, Larry Compton, the chapter 7 trustee, filed a *postpetition* action under a bankruptcy statute for avoidance of transfers (albeit, based on state law), although based on a *prepetition* transfer. It is not one filed as a successor of the debtor or continuing a debtor's prepetition litigation, but was filed on behalf of the creditors of the estate. It was not done pursuant to the operation of a business or in furtherance of a reorganization, but it was a legitimate attempt by a trustee to liquidate the estate for disbursement.

I have found no case on point discussing the priority status of a defendant's award

37. *In re Met–L–Wood Corp.*, 115 B.R. 133, 135–36 (N.D.Ill.1990)

38. *In re Madden*, 185 B.R. 815 (9th Cir. BAP 1995).

39. *In re Megafoods Stores, Inc.*, 163 F.3d at 1071.

40. *In re Madden*, 185 B.R. at 817.

41. *In re Madden*, 185 B.R. at 818–19.

42. *In re Abercrombie*, 139 F.3d at 758.

43. *In re Siegel*, 143 F.3d at 533.

44. *In re Megafoods Stores, Inc.*, 163 F.3d at 1071–72.

45. *In re Kadjevich*, 220 F.3d at 1021.

of attorney fees as the prevailing party in a § 544(b) proceeding, so this may be a matter of first impression. I will find, nonetheless, that this case is distinguishable from the main holding in *Kadjevich* and that the policy should be a postpetition action under § 544(b) brought by the trustee to avoid a transfer for the benefit of the estate which proves to be unsuccessful subjects the estate to an administrative expense for the attorney fees of the successful defendant.

4. *CONCLUSION*—A separate order will be entered granting administrative expense status to the $14,364.40 attorney fees and costs awarded to Connie Bennett.