**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: NANCY ELAINE YBARRA,
                                        *Debtor,*

BOEING NORTH AMERICAN, INC.,
Successor for Limited Purposes to
Rockwell International
Corporation,
                                        *Appellant,*

                    v.

NANCY ELAINE YBARRA,
                                        *Appellee.*

No. 03-56314

BAP No.
CC-02-01356-KBaP

OPINION

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Perris, Klein and Baum, Bankruptcy Judges, Presiding

Submitted March 10, 2005*
Pasadena, California

Filed September 14, 2005

Before: Kim McLane Wardlaw, Richard A. Paez,
Circuit Judges, and Ralph R. Beistline, District Judge.**

Opinion by Judge Paez

*This panel unanimously finds this case suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2)

**The Honorable Ralph R. Beistline, United State District Judge for the District of Alaska, sitting by designation.

13215

**COUNSEL**

Wayne R. Terry, Mitchell, Silberberg & Knupp LLP, Los Angeles, California, for the appellant.

Nancy Elaine Ybarra, Santa Barbara, California, pro se for the appellee.

**OPINION**

PAEZ, Circuit Judge:

After filing for bankruptcy protection, Nancy Elaine Ybarra ("Ybarra") persuaded a state court to vacate the dismissal of

an action she had filed against her former employer Rockwell International Corporation ("Rockwell") prior to filing for bankruptcy. Rockwell prevailed and was awarded attorney fees and costs by the state court. The bankruptcy court held that despite Ybarra's discharge in bankruptcy, Rockwell could collect the portion of the fees and costs incurred after Ybarra filed for bankruptcy. In a divided opinion, the Bankruptcy Appellate Panel of the Ninth Circuit ("BAP") reversed. The BAP majority held that the entire award was encompassed in the discharge. Boeing North American, Inc., as successor to Rockwell, appealed. We hold that the fees and costs incurred post-petition were not discharged, and therefore reverse.

## I.   Statement of Facts and Procedural History

In 1988, Ybarra sued Rockwell in Orange County Superior Court. Ybarra's Fifth Amended Complaint, filed in April of 1991, asserted two causes of action: 1) employment discrimination in violation of California Government Code section 12940; and 2) violation of the covenant of good faith and fair dealing.

On December 10, 1991, Ybarra filed a Chapter 11 bankruptcy petition. Ybarra did not initially schedule the cause of action against Rockwell. *Ybarra v. Boeing N. Am., Inc. (In re Ybarra)*, 295 B.R. 609, 611 (BAP 9th Cir. 2003). Rockwell first learned of the bankruptcy petition in 1993, and thereafter promptly objected to Ybarra's disclosure statement and moved to convert the case to Chapter 7. The bankruptcy court granted Rockwell's motion and converted the case in June of 1993.

The trustee for Ybarra's Chapter 7 bankruptcy estate agreed with Rockwell to settle the case via a compromise in which Rockwell would purchase Ybarra's cause of action for $17,500. *Id.* Although Ybarra objected to the proposed compromise, the bankruptcy court approved it on November 12,

1993. Thereafter the state court granted the trustee's and Rockwell's motion to dismiss Ybarra's lawsuit.

On September 29, 1993, Ybarra amended her schedule of exempt property to add the cause of action against Rockwell. The bankruptcy court sustained Rockwell's objection to Ybarra's claim of exemption on February 24, 1994. The BAP reversed this decision, and we affirmed the BAP. *Ybarra v. Rockwell Int'l Corp. (In re Ybarra)*, No. 96-55203, 1997 WL 579130 (9th Cir. Aug. 8, 1997).

On remand, the bankruptcy court ruled that the cause of action was exempt. The court gave Ybarra the option of either accepting $17,500 in full satisfaction and release of all claims against Rockwell ("the Election"), or taking ownership of "all right, title and interest" in the lawsuit.

Ybarra elected to take ownership of the cause of action. Thereafter, Ybarra successfully persuaded the state court to set aside the dismissal. *Ybarra*, 295 B.R. at 612. Ultimately, the state court granted summary judgment in favor of Rockwell. Rockwell then moved for an award of attorney fees and costs pursuant to California Code of Civil Procedure sections 1032 and 1033.5[1] and California Government Code sections 12940(a) and 12965(b).[2] The state court awarded Rockwell $456,884.03 in attorney fees and costs. Ybarra appealed, and the California Court of Appeal affirmed in 2001. *Ybarra*, 295 B.R. at 612.

Meanwhile, the bankruptcy court had granted Ybarra a discharge in May of 1998 pursuant to 11 U.S.C. § 727. In light of the discharge, Rockwell moved the bankruptcy court for

---

[1]Section 1032(b) provides for the award of costs to prevailing parties. Section 1033.5(a)(10) states that attorney fees are allowable costs under § 1032 where they are authorized by contract, statute, or law.

[2]Section 12965(b) permits a court to award attorney fees and costs to prevailing parties brought under that section.

leave to enforce its state court award of fees and costs. The bankruptcy court partially granted Rockwell's motion, holding that the portion of the award incurred after Ybarra filed her bankruptcy petition ($159,030.78) was not discharged. It held that Rockwell was free to collect this "Enforceable Amount" without violating the discharge injunction of 11 U.S.C. § 524. In awarding Rockwell attorney fees incurred after the filing of Ybarra's bankruptcy petition, the bankruptcy court relied on *Siegel v. Federal Home Loan Mortgage Corp.*, 143 F.3d 525 (9th Cir. 1998), which held that an award of attorney fees incurred post-petition based on a pre-petition cause of action was not discharged in bankruptcy.

Ybarra appealed the bankruptcy court's decision to the BAP. The BAP, in a divided decision, reversed, holding that the entire fee and cost award was discharged in Ybarra's bankruptcy. *Ybarra*, 295 B.R. at 617. The majority opinion relied on *Abercrombie v. Hayden Corp. (In re Abercrombie)*, 139 F.3d 755 (9th Cir. 1998), and *Kadjevich v. Kadjevich (In re Kadjevich)*, 220 F.3d 1016 (9th Cir. 2000), both of which held that claims for post-petition attorney fees could not be granted administrative expense priority in the distribution of bankruptcy assets. *Ybarra*, 295 B.R. at 612-16. This case, however, involves whether Ybarra's debt to Rockwell was discharged, not whether Rockwell's claim should be accorded administrative expense priority in the distribution of the bankruptcy estate's assets. The BAP majority explained that it relied on the administrative expense priority cases because they turned on the issue of whether attorney fees were a pre-petition claim. *Id.* at 612. The majority distinguished *Siegel* on the ground that it involved a suit commenced post-petition. *Id.* at 616. The dissent argued that *Siegel* should apply because it involved the discharge of post-petition attorney fees, which, it reasoned, is a "different concern" from the issue of administrative expense priority in *Abercrombie* and *Kadjevich. Ybarra*, 295 B.R. at 624 (Baum, J., dissenting).[3] Rockwell timely appealed.

---

[3]A concurring opinion by Judge Klein agreed that *Abercrombie* and *Kadjevich* applied, but distinguished *Siegel* because it involved misconduct on the part of the debtor. *Ybarra*, 295 B.R. at 617 (Klein, J., concurring).

## II.   Jurisdiction and Standard of Review

We have jurisdiction to review decisions of the BAP pursuant to 28 U.S.C. § 158(d). We review BAP decisions de novo, and we independently review the bankruptcy court's decision on appeal from the BAP. *Carrillo v. Su (In re Su)*, 290 F.3d 1140, 1142 (9th Cir. 2002). We review the bankruptcy court's conclusions of law de novo, and its findings of fact for clear error. *Id.*

## III.   Analysis

Ybarra argues that the BAP should be affirmed because the rule set forth in *Abercrombie* and *Kadjevich* applies to this case. Rockwell advances the BAP dissent's argument that *Siegel* controls. As we explain below, we agree with the BAP dissent's conclusion that this case is governed by the discharge principles recognized in *Siegel*, rather than the rules relating to administrative expense priority claims. Accordingly, we reverse the BAP's judgment and remand with directions to enter a judgment affirming the bankruptcy court. Because we conclude that this case is governed by the principles of discharge, we first address this area of bankruptcy law.

### A.   Discharge Pursuant to 11 U.S.C. § 727

**[1]** A Chapter 7 bankruptcy discharge releases the debtor from personal liability for her pre-bankruptcy debts. *United States v. Hatton (In re Hatton)*, 220 F.3d 1057, 1059-60 (9th Cir. 2000); 1 David G. Epstein et al., Bankruptcy § 1-7(e), at 12 (1992). A discharge is the "legal embodiment of the idea of the fresh start; it is the barrier that keeps the creditors of old from reaching the wages and other income of the new." 2 *id.* § 7-16, at 312. If the debtor receives a discharge, the creditor will receive only its pro-rata share of the distribution of the property of the bankruptcy estate. 1 *id.* § 1-7, at 12.

**[2]** Specifically, § 727 of the Bankruptcy Code ("the Code")[4] "discharges the debtor from all debts that arose before the date of the order for relief . . . ." 11 U.S.C. § 727(b). The Code defines "debt" as "liability on a claim." § 101(12). "Claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." § 101(5)(A). "This 'broadest possible definition' of 'claim' is designed to ensure that 'all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case.' " *California Dep't of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 929 (9th Cir. 1993) (quoting H.R. Rep. No. 95-595, at 309 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5963, 6266; S. Rep. No. 95-598, at 22 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5808).

**[3]** The filing of a petition under Chapter 7 constitutes an "order for relief." *See* § 301. For the purposes of discharge, conversion of a case from Chapter 11 to Chapter 7 constitutes an order for relief, but does not change the date of the filing of the petition or order of relief. § 348(a). Thus, the relevant date in this case is December 10, 1991, the date of Ybarra's original bankruptcy petition. Rockwell argues that its claim for attorney fees and costs did not arise before the order of relief and therefore was not discharged.[5]

---

[4]Title I of the Bankruptcy Reform Act of 1978, Pub. L. No. 95-598, 92 Stat. 2549, as amended; Title 11 United States Code.

[5]The bankruptcy court noted, and on appeal the parties do not dispute, that none of the § 523 exceptions to discharge apply to this case. *See* § 727(b). Similarly, Rockwell does not argue that the discharge was improper under § 727(a). Rather, Rockwell argues that its claim was not discharged because it did not arise before Ybarra filed her petition, the effective date of the order of relief.

## B.  When a Claim Arises Under 11 U.S.C. § 727(b)

**[4]** "[A] claim arises, for purposes of discharge in bankruptcy, at the time of the events giving rise to the claim . . . ." *O'Loughlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000). For example, in *Jensen*, we held that environmental cleanup expenses incurred post-petition arising from pre-petition conduct were discharged in bankruptcy. 995 F.2d at 931. In *O'Loughlin*, alleged violations of the Americans with Disabilities Act, 42 U.S.C. §§ 12101-12213, that took place before the date of confirmation[6] met the definition of "claim" and were discharged in Orange County's bankruptcy, whereas violations that took place after the date of confirmation were not discharged. 229 F.3d at 874-75. We reasoned that the County could not insulate itself from post-confirmation violations, despite its argument that they were part of the same course of conduct as pre-confirmation violations. *Id.* at 875.

In *Siegel*, we addressed the issue of whether attorney fees incurred post-petition were discharged in bankruptcy.[7] There, mortgagee Freddie Mac foreclosed on a property and filed suit in federal district court, seeking a deficiency judgment against Siegel, the mortgagor. *Siegel*, 143 F.3d at 528. Before that case went to trial, Siegel filed for bankruptcy. *Id.* Freddie Mac filed proofs of claim in the bankruptcy proceeding, to which Siegel did not object. *Id.* The bankruptcy court granted Freddie Mac relief from the automatic stay provisions of 11 U.S.C. § 362 so that it could foreclose on a second property. *Id.* Siegel was then granted a discharge. *Id.*

---

[6]*O'Loughlin* involved the adjustment of a municipality's debts, in which the debtor is discharged from debts that arose before the confirmation of the adjustment plan. *See* 11 U.S.C. § 944(b). Thus, the key date was that of confirmation, rather than the date the petition was filed, as it would have been in a Chapter 7 case.

[7]The *Siegel* opinion did not clarify whether the case involved a liquidation under Chapter 7, although the BAP later surmised that it did. *In re Good Taste, Inc.*, 317 B.R. 112, 115 (Bankr. D. Alaska 2004).

After Siegel filed the bankruptcy petition, but two months prior to the discharge, he sued Freddie Mac in state court, alleging breach of duties under the deeds of trust. *Id*. at 528, 531. Freddie Mac removed the case to federal court. *Id*. at 528. The federal district court granted summary judgment to Freddie Mac on the ground that the action was barred by the res judicata effect of the bankruptcy proceeding. *Id*. The district court awarded Freddie Mac attorney fees incurred in pursuing its rights under the deeds of trust, pursuant to a provision in the deeds. *Id*. at 528, 531.

On appeal, Siegel argued that the claim for attorney fees was discharged in the bankruptcy proceedings. *Id*. at 532. We analyzed the issue under the framework of whether the claim was "contingent" pursuant to § 101(5)(A). *Id*. A contingent claim is "one which the debtor will be called upon to pay only upon the occurrence or happening of an extrinsic event which will trigger the liability of the debtor to the alleged creditor." *Id*. (quoting *Fostvedt v. Dow (In re Fostvedt)*, 823 F.2d 305, 306 (9th Cir. 1987)). We reasoned that because, after being "freed from the untoward effects of the contracts he had entered into" through the discharge, Siegel voluntarily chose to "return to the fray and to use the contract as a weapon," it was "perfectly just, and within the purposes of bankruptcy, to allow the same weapon to be used against him." *Id.* at 533. We emphasized Siegel's post-petition initiation of new litigation:

> Siegel's decision to pursue a whole new course of litigation made him subject to the strictures of the attorney's fee provision. In other words, while his bankruptcy did protect him from the results of his past acts, including attorney's fees associated with those acts, it did not give him carte blanche to go out and commence new litigation about the contract without consequences.

*Id*. at 534. On the basis of this post-petition voluntary action on the part of the debtor, we concluded that the award of post-petition attorney fees was not discharged. *Id*.

*Siegel* cited with approval two opinions that shed light on the boundaries of the definition of "claim" for the purposes of discharge. *Id*. at 533. *Shure v. Vermont (In re Sure-Snap)*, 983 F.2d 1015 (11th Cir. 1993), addressed the discharge of debt under § 1141(d)(1)(A), which discharges a Chapter 11 debtor from debts that arose before the date of the order confirming the bankruptcy plan. After filing for bankruptcy but before the order confirming the plan, the debtor sought a declaration from the bankruptcy court that its mortgage agreement with a creditor was void. *Shure*, 983 F.2d at 1017. The bankruptcy court upheld the agreement, and then confirmed the Chapter 11 plan one week later. *Id*. The debtor then appealed, and the district court affirmed. *Id*.

The creditor sought attorney fees and costs incurred in the appeal pursuant to a contractual provision in the mortgage agreement. *Id*. The Eleventh Circuit held that because the debtor "voluntarily continued to litigate" after confirmation of the plan, it did so "at the risk of incurring post-confirmation costs involved in its acts." *Id*. at 1018. The court characterized the appeal as being "initiated" by the debtor, and reasoned that the creditor "had no choice but to defend." *Id*. It therefore awarded the creditor attorney fees incurred in the post-confirmation appeal, concluding that the fees were not discharged. *Id*. at 1019.

In *Siegel*, 143 F.3d at 533, we also cited *In re Hadden*, 57 B.R. 187, 190 (Bankr. W.D. Wis. 1986), in which the bankruptcy court declined to discharge attorney fees incurred post-petition. In *Hadden*, the debtor initiated the state litigation pre-petition, and voluntarily continued the litigation after filing under Chapter 7. *Id*. at 188. The bankruptcy court noted that "bankruptcy was intended to protect the debtor from the continuing costs of pre-bankruptcy acts but not to insulate the

debtor from the costs of post-bankruptcy acts." *Id.* at 190. It therefore balanced the competing policy concerns of providing debtors with a fresh start and preventing post-bankruptcy acts taken with "impunity." *Id.* The court concluded: "If the debtor chooses to enjoy his fresh start by pursuing pre-petition claims which have been exempted, he must do so at the risk of incurring the post-petition costs involved in his acts." *Id.*; *see also Big Yank Corp. v. Liberty Mutual Fire Ins. Co. (In re Water Valley Finishing, Inc.)*, 139 F.3d 325, 328 (2d Cir. 1998) (holding that a claim for sanctions in the amount of attorney fees was not discharged where, post-petition, the debtor rejected the creditor's settlement offer in bad faith).

**[5]** In sum, we have held that post-petition attorney fee awards are not discharged where post-petition, the debtor voluntarily "pursue[d] a whole new course of litigation," commenced litigation, or "return[ed] to the fray" voluntarily. *Siegel*, 143 F.3d at 533-34. We have also endorsed the notion that by voluntarily continuing to pursue litigation post-petition that had been initiated pre-petition, a debtor may be held personally liable for attorney fees and costs that result from that litigation.

## C. Inapplicability of Administrative Expense Priority Caselaw

Although administrative expense priority is not at issue in this case, the BAP majority relied on *Abercrombie* and *Kadjevich*, both involving administrative expense priority, because the outcome of those cases turned on whether attorney fees arose from a pre-petition claim. *Ybarra*, 295 B.R. at 612. The BAP dissent found the administrative expense priority caselaw inapt because

> [t]he purpose of administrative expense priority is to facilitate the operation of the debtor in possession's business with a view to rehabilitation. . . . The pur-

> pose of a discharge is to provide the debtor with a fresh start, which is a different concern from determining administrative priority. The Ninth Circuit has not concluded that the standard for determining administrative expense status under § 503(b) and dischargeability under § 727(b) is the same.

*Id.* at 624. We agree with the BAP dissent's assessment and hold that because our standards for determining administrative expense priority are animated by different purposes than are our standards for determining which claims are discharged in bankruptcy, *Kadjevich* and *Abercrombie* do not control this case.[8]

[6] Whereas in discharge cases, the personal liability of the debtor is at issue, creditors seeking administrative expense priority are pursuing property of the bankruptcy estate. Section 507 of the Code sets forth the order of priority accorded to various classes of unsecured creditors when a Chapter 7 bankruptcy estate is liquidated. Administrative expense claims, defined in § 503, are accorded the first level of priority; these claims are paid in full before claims in a lower category. *See* § 726(a)(1); *In re Lazar*, 207 B.R. 668, 673 (Bankr. C.D. Cal. 1997). Allowable administrative expenses include "the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services

---

[8]We note that the BAP majority perceived a discrepancy between our determinations of whether attorney fees arose from a pre-petition claim in *Kadjevich* and *Siegel*: while both cases involved fees awarded as a result of the debtor's voluntary post-petition conduct, in *Siegel* we held that the fee award was not discharged, whereas in *Kadjevich* we held that the fee award could not be granted administrative expense priority. As the splintered BAP opinion reflects, this perceived discrepancy has led to some confusion in the bankruptcy courts. *See In re Good Taste, Inc.*, 317 B.R. at 114-16, 120 (noting the "ambiguous state of the 9th Circuit authority" in this area). Ultimately, because the contrasting outcomes in *Kadjevich* and *Siegel* can be explained by the differing purposes of discharge and administrative expense priority, we need not attempt to "harmonize" our caselaw.

rendered after the commencement of the case." § 503(b)(1)(A). To be deemed an administrative expense, the claim must have arisen from a transaction with the debtor in possession,[9] and directly and substantially benefitted the estate. *Abercrombie*, 139 F.3d at 757 (quoting *Microsoft Corp. v. DAK Indus. (In re DAK Indus.)*, 66 F.3d 1091, 1094 (9th Cir. 1995)).[10] Thus, under the Code, only claims arising from post-petition transactions may be granted such priority. *Kadjevich*, 220 F.3d at 1019; *Abercrombie*, 139 F.3d at 758.

**[7]** The purpose of administrative priority status is to encourage third parties to contract with the bankruptcy estate for the benefit of the estate as a whole. *See Christian Life Ctr. Litig. Def. Comm. v. Silva (In re Christian Life Ctr.)*, 821 F.2d 1370, 1373 (9th Cir. 1987); *Kadjevich*, 220 F.3d at 1019 (noting that the purpose of granting priority to post-petition debts is "so that third parties will risk providing the goods and services that are necessary for a struggling debtor to reorganize"); *see also Abercrombie*, 139 F.3d at 757 (citing encouragement of third parties to deal with the debtor in possession and facilitate rehabilitation as purpose of the administrative expense priority). The central question in determining whether a claim is granted administrative expense priority is whether the third party should be paid at the expense of the debtor's existing unsecured creditors. *See Total Minatome*

---

[9]The "debtor in possession" is a debtor in a Chapter 11 or Chapter 12 case or a person who has qualified as a trustee under § 322. § 1101; 1 Epstein et al., Bankruptcy § 1-4, at 9.

[10]The Supreme Court carved out an exception to this "post-petition transaction requirement" in *Reading v. Brown*, 391 U.S. 471 (1968). *Abercrombie*, 139 F.3d at 758. There, the Court determined that an award of tort damages to victims of a fire caused by the Chapter 11 receiver's negligence was entitled to administrative expense priority, despite the fact that victims did not transact with the receiver, nor did the estate benefit from the event. *Reading*, 391 U.S. at 485. In the interests of "fairness to all persons having claims against the insolvent," *id*. at 477, the Court held that tort claims arising post-petition were "actual and necessary expenses" of preserving the estate. *Id*. at 482, 485.

*Corp. v. Jack/Wade Drilling, Inc. (In re Jack/Wade Drilling, Inc.)*, 258 F.3d 385, 389 (5th Cir. 2001).

**[8]** By contrast, in the discharge context, the question is whether the debtor should be released from pre-petition debts so that she can be given a "fresh start." *See Jensen*, 995 F.2d at 928. The discharge inquiry involves the existence of personal liability, while administrative expense priority concerns the distribution of assets from a limited pool. Even if a cause of action arose pre-petition, the discharge shield cannot be used as a sword that enables a debtor to undertake risk-free litigation at others' expense. *See Siegel*, 143 F.3d at 533-34. Personal liability for fees incurred through the voluntary pursuit of litigation initiated post-petition is more consistent with the purpose of discharge. This policy difference supports our conclusion that the administrative expense priority cases do not control our determination of whether a claim is pre-petition or post-petition in the discharge context.

**[9]** As the BAP noted, *Siegel* was decided less than six weeks after *Abercrombie* but failed to cite it. *Ybarra*, 295 B.R. at 613. *Kadjevich* was decided two years after *Siegel*, but does not discuss that case. In our view, the best explanation for this lack of integration is that *Siegel* involved discharge, while *Abercrombie* and *Kadjevich* involved administrative expense priority — two distinct areas of bankruptcy law with separate purposes. In sum, we conclude that the rules set forth in *Abercrombie* and *Kadjevich* do not apply to the question of whether debts are discharged.

### D.   Discharge of Rockwell's Attorney Fees and Cost Claims

**[10]** In light of the foregoing discussion, we reaffirm that claims for attorney fees and costs incurred post-petition are not discharged where post-petition, the debtor voluntarily commences litigation or otherwise voluntarily "return[s] to the fray." *See Siegel*, 143 F.3d at 533-34. Whether attorney

fees and costs incurred through the continued prosecution of litigation initiated pre-petition may be discharged depends on whether the debtor has taken affirmative post-petition action to litigate a prepetition claim and has thereby risked the liability of these litigation expenses.

[11] In this case, after petitioning for bankruptcy, Ybarra petitioned the bankruptcy court to exempt the state suit against Rockwell, and then appealed the bankruptcy court's denial of this exemption to the BAP and this court. On remand, Ybarra chose to pursue the state case rather than accepting Rockwell's $17,500 settlement offer. Ybarra actively persuaded the state court to set aside the dismissal. We conclude that by affirmatively reviving the state suit, Ybarra "returned to the fray." Thus, under *Siegel*, Rockwell's claim for attorney fees and costs incurred post-petition was not discharged in the bankruptcy.

[12] The BAP reasoned that because the bankruptcy court's decisions not to exempt the lawsuit and to approve the settlement were later overturned, Ybarra's state suit should be considered continuous litigation, rather than the commencement of a new suit post-petition. *Ybarra*, 295 B.R. at 616. We disagree, and conclude that Ybarra's actions to revive the state suit were sufficiently voluntary and affirmative to be considered "returning to the fray." Accordingly, we reverse the BAP's holding that the attorney fees incurred post-petition were discharged.

## IV. CONCLUSION

In light of the foregoing, we conclude that the award of attorney fees and costs incurred post-petition was not discharged in Ybarra's bankruptcy.[11] We therefore REVERSE.

---

[11]Ybarra also challenges the BAP's refusal to impose sanctions against Rockwell for allegedly violating the discharge injunction of 11 U.S.C. § 524(a) by filing an abstract of judgment, reporting to a credit bureau,

and filing motions for Ybarra to appear for examination. As the BAP concluded, this argument is without merit. *See Ybarra*, 295 B.R. at 617. As the record reflects, Rockwell was proceeding pursuant to the bankruptcy court's order ("Leave Order") which granted Rockwell's motion to collect the "Enforceable Amount" of its cost and fee award. Because Rockwell was attempting to collect debts that the bankruptcy court held were not discharged, these debts would not have been subject to the injunction. *See Ruvacalba v. Munoz (In re Munoz)*, 287 B.R. 546, 556 (BAP 9th Cir. 2002). Moreover, Ybarra did not move for a stay of the bankruptcy court's decision pending the appeal. *See* Fed. R. Bankr. Proc. 8017(a), (b). We therefore affirm the BAP's determination that Rockwell did not violate the discharge injunction.

Ybarra next argues that we should exercise our discretion to award sanctions against Rockwell for bringing a frivolous appeal. Her request for sanctions on appeal is improper, because such a request must be made in a separate motion pursuant to Federal Rule of Appellate Procedure 38. In any event, in light of our disposition, sanctions would not be warranted.